ORDERED.

Dated: March 27, 2018

Jerry A. Funk
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

MICHAEL LEE ORTON, and RENE G. ORTON,

    Debtors.
_____/

GORDON P. JONES, as Chapter 7 Trustee,

    Plaintiff,
v.

GABRIELLE NICHOLE ORTON,

    Defendant.
_____/

Chapter 7
Case No. 3:17-bk-1242-JAF

Adv. Pro. No. 3:17-ap-0148-JAF

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This adversary proceeding is before the Court upon the Complaint (Doc. 1) filed by GORDON P. JONES, as Chapter 7 Trustee (the "Trustee") against defendant GABRIELLE NICHOLE ORTON. The Trustee seeks to avoid certain transfers under actual and constructive fraud theories, pursuant to federal bankruptcy law and Florida law. On March 7, 2018, the Court

conducted a trial on these claims. Upon the evidence and argument presented, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## BACKGROUND

In April 2017, Debtors Michael Lee Orton and Rene G. Orton (the "Debtors") filed a joint petition under Chapter 7 of the Bankruptcy Code. This adversary proceeding was filed in August 2017. Defendant Gabrielle Orton is the daughter of Debtors (the "Daughter").

The complaint seeks to avoid three transfers made by the Debtors to the Daughter: i) the February 2016 transfer of title to the family's 2003 Kia Sorento (the "Kia"); ii) the March 2016 payment for catalytic-converter repairs to the Kia in the amount of roughly $2,100; and iii) the June 2016 transfer of automobile insurance proceeds in the amount of $4,290 paid by the insurer following an accident involving the Kia in May 2016. The complaint alleges four transfer-avoidance counts under the following theories of fraud: 1) actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A); 2) constructive fraud pursuant to 11 U.S.C. § 548(a)(1)(B); 3) actual fraud pursuant to section 726.105(1)(a), Florida Statutes; and 4) constructive fraud pursuant to section 726.105(1)(b), Florida Statutes. Count 5 seeks recovery of the proceeds of any transfers that are successfully avoided.

## FINDINGS OF FACTS

The Daughter was born in December 1994 and graduated from high school in June 2013. Beginning in late 2010 or early 2011, after turning sixteen, the Daughter began using her Father's truck to drive to work and school. She continuously held a full-time job from age sixteen to the present. The Daughter lived in her parents' home until October 2016 when she got married at the age of twenty-one.

During high school, the Daughter undertook dual-enrollment courses at Florida State College at Jacksonville ("FSCJ"). Following high school, the Daughter enrolled full-time at FSCJ. She attended classes at three different FSCJ campuses because not all of her classes were offered on one campus. She regularly drove herself to each of these locations, as well as to work. Her work hours varied between thirty and forty hours per week, and her take-home pay correspondingly varied between $350 and $400 per week. This money went to pay living and school expenses, as well as savings to later repay college loans. The Daughter received her associates degree in May 2015, and graduated on the Dean's List with a 4.0 grade-point average. The Daughter did not pursue any schooling after May 2015. Her student loans totaled roughly $10,000 when she finished school, but there was no testimony as to how much she paid or when her repayments began and ended. It is not clear when or if she fully repaid the loans.

In 2014, while still in college, the Daughter developed knee problems related to a preexisting nerve issue. The family truck had no foot-railing on which she could climb into or out of the truck. As a result of the knee problems, the Daughter began using the Debtors' Kia as her regular vehicle for work, school, and recreation in 2014.

In early 2016, prior to moving out but after graduating from college, the Daughter underwent surgery on her knee. Just after the surgery, in February 2016, the Debtors transferred title to the Kia to the Daughter; the Kia was previously titled jointly in the Debtors' names. The Daughter testified, on direct exam, that the Kia was worth $1,500 at the time of the transfer. This was the only testimony on valuation of the Kia at the time of the transfer. In March 2016, the Debtors also paid roughly $2,100 for repairs to the Kia related to its catalytic converter. In May 2016, the Daughter was involved in a motor-vehicle accident. The automobile insurer totaled the vehicle and took title in return for a payment of insurance proceeds in the amount of $4,290. The

insurance proceeds were conveyed in June 2016 by check made jointly payable to the Daughter and the Debtors. It was not explained why the check was made payable to all three individuals even though the Daughter was the sole title owner. The Court presumes all three were named insureds on the policy, which was paid for by the Debtors for the benefit of the Daughter. All three individuals endorsed the check, and all of the money was deposited into the Daughter's bank account. The Daughter testified that she used the insurance proceeds to purchase another vehicle.

The Debtors met with their first bankruptcy attorney in July of 2015. This first law firm did not file a petition on their behalf. Mr. Orton (the Debtor-Father) testified that this law firm "took our money and ran." Eventually, the Debtors retained their present counsel who filed the bankruptcy petition on their behalf. The Trustee contends this constitutes inferential evidence of improper bankruptcy planning or actual intent to hinder creditors. However, based on the testimony and demeanor of the witnesses, the Court finds that the Debtors' sole intent in making the subject transfers was to fulfill the parental-moral obligation the Debtors believed they owed to their Daughter. The Court does not find that the Debtors had actual intent to hinder, delay, or defraud any creditor. Finally, based on the testimony of Mr. Orton, the Court finds that the Debtors were insolvent at the time of the subject transfers and that, at that time, the Debtors specifically intended to incur and actually believed they would incur expenses/debt exceeding their ability to pay as debt became due.

## CONCLUSIONS OF LAW

*Actual fraud under federal bankruptcy law and Florida law.*

To prevail on an actual-fraud theory in an avoidance-transfer action, the plaintiff must prove, among other things, "actual intent to hinder, delay, or defraud" a creditor—which is true under both federal bankruptcy law and Florida law. Compare 11 U.S.C. § 548(a)(1)(A) (2016)

4

with § 726.105(1)(a), Fla. Stat. (2016).  The question of actual intent is a question of fact.  Belcher v. Atl. Capital Realty, LLC, 2010 WL 11507399, at *6 (M.D. Fla. Sept. 17, 2010); In re McFarland, 2014 WL 3925279, at *2 (S.D. Ga. Aug. 8, 2014).  Here, as stated above, the Court finds that the Debtors had no actual intent to hinder, delay, or defraud a creditor when they made the subject transfers.  The Debtors believed they had a moral obligation to help their Daughter.  Fulfilling this moral obligation was their sole intent behind the transfers.  As a result, the Trustee's claims brought under an actual-fraud theory must fail.

### *Constructive fraud under federal bankruptcy law and Florida law.*[1]

As applied to the present facts, in order to prevail on a claim under 11 U.S.C. § 548(a)(1)(B), the Trustee must prove by a preponderance of the evidence that:  (1) the subject transfer occurred within two years before the petition-filing date; (2) the Debtors were insolvent at the time of the transfer; and (3) the Debtors received less than reasonably equivalent value in exchange for the subject transfer.  11 U.S.C. § 548(a)(1)(B) (2017); see also In re McDonald, 265 B.R. 632, 636 (Bankr. M.D. Fla. 2001).

To achieve the equitable purposes of bankruptcy law, a Chapter 7 trustee "must look at the realities of the situation and examine the true nature of all transactions made" within two years of filing the petition.  Matter of Zedda, 103 F.3d 1195, 1203-04 (5th Cir. 1997).  In undertaking such analysis, substance will generally trump form.  Id.

---

[1] "Under § 544, the Trustee may bring an action to avoid any transfer of an interest of the debtor in property which is 'voidable by any actual unsecured creditor under state law.'"  In re Vilsack, 356 B.R. 546, 553 (Bankr. S.D. Fla. 2006).  Pursuant to section 726.105(1)(b), Florida Statutes, a transfer may be avoided if made without receiving "reasonably equivalent value" and, inter alia, the debtor intended to incur, believed he or she would incur, or reasonably should have believed he or she would incur "debts beyond his or her ability to pay as they became due."  § 726.105(1)(b) (2016); 13 Fla. Jur 2d Creditors' Rights § 218 (discussing "reasonably equivalent value" under section 726.105(1)(b)).  The parties have presented no reason the Court should apply section 726.105(1)(b) any differently than § 548(a)(1)(B) in regard to "reasonably equivalent value."  "Reasonably equivalent value" is the only fact issue disputed in this proceeding.  Thus, the Court focuses its analysis on § 548(a)(1)(B) of the Bankruptcy Code but the same conclusions apply equally under section 726.105(1)(b), Florida Statutes.

"It has long been established that whether fair consideration [or reasonably equivalent value] has been given for a transfer is largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts." In re TOUSA, Inc., 680 F.3d 1298, 1311 (11th Cir. 2012) (internal quote marks omitted, bracketing added); In re Chase & Sanborn Corp., 904 F.2d 588, 593 n.11 (11th Cir. 1990) (holding that caselaw applying the concept of "fair consideration" under the old Bankruptcy Act of 1898 has been adopted as applicable to the concept of "reasonably equivalent value" under the Bankruptcy Code of 1978).

"In determining 'reasonably equivalent value' courts [will often] consider the good faith of the parties, the fair value of the property and what the debtor actually received, and whether it was an arm's length transaction." In re Capitol Inv., Inc., 473 B.R. 838, 844 (Bankr. S.D. Fla. 2012) (bracketing added). Some bankruptcy courts have stated that the "real test" for determining constructive fraud is whether the transfer resulted in an "unjust diminution of the debtor's estate." In re Waterford Wedgwood USA, Inc., 500 B.R. 371, 379 (Bankr. S.D.N.Y. 2013). Finally, "[e]thereal or emotional rewards, such as love and affection, do not qualify as value for purposes of defeating a constructive fraudulent conveyance claim." In re Palladino, 556 B.R. 10, 15 (Bankr. D. Mass. 2016).

In defense of the transfers, the Daughter relies on In re Palladino, 556 B.R. 10 (Bankr. D. Mass. 2016), and In re Akanmu, 502 B.R. 124 (Bankr. E.D.N.Y. 2013). In Palladino, the trustee sought to avoid payments made by the debtor-parents to a university on behalf of their young-adult daughter for college tuition. The debtor-mother testified that paying the tuition "gives [the daughter] the best chance of graduating . . . [and puts her] in the best position to go to graduate school . . . and become financially self-sufficient." Palladino, 556 B.R. at 15. The debtor- mother testified that if the daughter was unable to graduate, the daughter "will either move back home

with me, or she will obtain her own place to live in which case I will have to pay for her housing, bills and food costs." Id. at 16.  The court held that a "parent can reasonably assume that paying for a child to obtain an undergraduate degree will enhance the financial well-being of the child which in turn will confer an economic benefit on the parent." Id.  The court then concluded that this economic benefit "constitutes a quid pro quo that is reasonable and reasonable equivalence is all that is required." Id.  The court granted summary judgment in favor of the defendant university and denied avoidance of the tuition payments.

In Akanmu, the trustee sought to avoid tuition payments made by the joint debtor-parents to a parochial school on behalf of their minor children.  The court noted that "[d]ebtors are legally obligated under New York Law to provide their minor children with an education," and held the "fact that they chose to do so by sending their children to private or parochial school, rather than public school, does not render the payments subject to scrutiny by the [t]rustee for avoidance." Akanmu, 502 B.R. at 132-36 (citing N.Y. Fam. Ct. Act § 1012(f)).  The court also mentioned, in dicta, that it "is by no means clear that the pre-petition tuition payments on behalf of a college-age child would be recoverable as a constructively fraudulent conveyance." Id.

Here, the Kia's title was transferred to the Daughter in February 2016, the repairs were paid for in March 2016, and the insurance proceeds were turned over to the Daughter in June 2016.  The value of the Kia and the value given for the March 2016 repairs are inherently subsumed by the insurance proceeds.  That is, the value of the Kia at the time of the transfer was roughly $1,500 as stated by the Daughter.  The $2,100 repairs added monetary value back into the car insofar as the repairs increased the vehicle's functionality and usefulness.  This notional value of the title and repairs was subsequently transferred to the insurer in exchange for the insurance proceeds.  Thus, the insurance proceeds subsume the other two transfers and the Debtors' transfer of their interest

7

in the insurance proceeds is the only material transfer for avoidance purposes—under these narrow facts and circumstances.

The problem with applying Palladino and Akanmu to these facts is that the Debtors did not make tuition payments on behalf of their Daughter. The Daughter graduated with an associates degree in May 2015 and no longer attended school when the transfer of insurance proceeds occurred. Further, there is no testimony as to the Daughter's student loan payments. Likewise, there is no testimony showing that the money transferred to the Daughter ultimately went to pay student loans or that the Debtors would have economically benefited from helping to pay the Daughter's student loans. See, e.g., Palladino, 556 B.R. at 16 (holding that paying for a child's undergraduate education may "confer an economic benefit on the parent" where there is evidence to support such a finding). Rather, the Daughter testified she used the proceeds to purchase another vehicle. This is a dispositive distinction. The Court cannot conclude that, as a question of law or fact, the evidence presented demonstrates the receipt of reasonably equivalent value for the Debtors' transfer of their share of the insurance proceeds. It is undisputed that the transfer was made within the requisite two year period and when the Debtors were insolvent. Thus, the transfer of the Debtors' pro rata share of the insurance proceeds, equaling $2,860.03, is avoidable as constructively fraudulent.

The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.